QUESTION: Is a district school board required to negotiate for architectural services under the Consultants' Competitive Negotiation Act, s. 287.055, F.S., when, under the terms of an existing architectural contract, the plans and specifications previously prepared may be reused by the board at a percentage of the original cost?
SUMMARY: Pending legislative or judicial clarification, a district school board is required to comply with the public announcement and competitive negotiation requirements of the CCNA, s. 287.055, F.S., in purchasing architectural services for a classroom building, even though under the terms of an existing architectural contract the plans and specifications previously prepared may be reused by the board at its option at a percentage of the original cost. The Consultants' Competitive Negotiation Act (the "CCNA" hereafter) requires public agencies to make a public announcement of "each occasion when professional services are required to be purchased, except in cases of valid public emergencies," (Emphasis supplied.) to select no less than three firms for the purpose of competitive selection, and to negotiate a contract "with the most qualified firm for professional services at compensation which the agency determines is fair, competitive and reasonable." Section287.055, F.S. As noted in AGO 074-191, the purpose of the CCNA is . . . to require competitive negotiation with a view of obtaining the most qualified firm for a particular project at the most reasonable compensation and, at the same time, respect and preserve the obligations of contracts in existence on the effective date of the act, as required by the act. We were there concerned with a contract for professional services entered into prior to the effective date of the CCNA; and, as noted therein, provisions of such contracts for services to be performed in the future must be given full force and effect "without regard to the competitive negotiation requirements of the Act." Here, however, the contract was negotiated after the effective date of the CCNA and pursuant to its provisions. The school board has agreed to pay the architect 20 percent of the initial fee (which was 6 percent of the construction cost) for the plans and specifications if it desires to reuse them — 25 percent if a construction contract based on such plans is actually awarded — and a total of 50 percent of the initial fee if the architect also provides architectural supervision of the construction contract. Both the school board and the architect will, of course, be bound by the terms of their agreement — which is, in effect, an option to reuse the architect's plans and services at an agreed-upon compensation for another project. (Cf. 6 C.J.S. Architects s. 10, p. 303, noting that, in the absence of an agreement to the contrary, the architect is not the owner of plans prepared by him which are accepted and paid for by the employer.) But it does not necessarily follow that such an agreement will relieve the school board from compliance with the CCNA. Aside from the fact that an option to reuse the architect's plans and services on other projects would not appear to be an appropriate subject for competitive negotiations, there are other reasons for concluding that an option to reuse plans and services already purchased for another project does not relieve the public body of its duty to negotiate a purchase of the architectural services for the new project. The price agreed upon for an option to purchase may at the time of the agreement represent the most reasonable compensation for which a qualified firm may be obtained; however, conditions may have changed by the time the option is desired to be exercised. Moreover, while the contract here in question appears to be favorable to the district school board, the terms of other option agreements might not be so advantageous to the public body and thus might be "bettered" in competitive negotiations. Finally, by including this type of option in professional service contracts, a public body could continue to award such contracts to a professional firm favored by that body, contrary to the legislative intent that consideration be given to the "volume of work previously awarded to the firm by the agency, with the object of effecting an equitable distribution of contracts among qualified firms, . . . ." Section 287.055(4)(b), F.S. As noted above, the CCNA requires competitive negotiations upon each occasion when professional services are required to be purchased in order to obtain the best-qualified firm at a "fair, competitive and reasonable" compensation and to effect an "equitable distribution" of these contracts among qualified firms. And, in my opinion, it would be contrary to the letter of the act, as well as its spirit and intent, to hold that the negotiation of an option to purchase architectural services in the future complies with the competitive negotiation requirements of the CCNA with respect to the purchase of such services. Accordingly, pending legislative or judicial clarification, your question is answered in the affirmative.